UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

BORIS POGIL,

                Plaintiff,

      -v-                               No.  21-CV-07628-LTS-BCM

KPMG LLP,

                Defendant.

--------------------------------------------------------x

M<small>EMORANDUM</small> O<small>RDER</small>

        In this action, Plaintiff Boris Pogil ("Plaintiff") brings three claims against KMPG, LLP ("KPMG" or "Defendant").  (See docket entry no. 40 ("Am. Compl.").)  Count One asserts a claim for gender discrimination under 42 U.S.C. section 2000e-2 ("Title VII").  (Id. ¶¶ 114-25.)  Count Two asserts a retaliation claim under Title VII.  (Id. ¶¶ 126-35.)  Finally, Count Three seeks overtime pay under New York Labor Law Article 19 and New York Codes, Rules, and Regulations title 12 section 142-2.14 (collectively, "NYLL"), as well as 29 U.S.C. section 201 et seq. (the "FLSA").  (Id. ¶¶ 136-39.)

        This Memorandum Order addresses Defendant's motion for summary judgment.  (Docket entry no. 73.)  The Court has jurisdiction of this action under 28 U.S.C. sections 1331 and 1367(a).  The Court has considered carefully the parties' submissions—(docket entry no. 74 ("Def. Mem."); docket entry no. 84 ("Pl. Mem."); docket entry no. 87 ("Def. Reply"); docket entry no. 100 ("Def. Supp. Mem."); docket entry no. 102 ("Pl. Supp. Mem."); docket entry no. 103 ("Def. Supp. Reply"))—and, for the reasons set forth below, Defendant's motion for summary judgment is granted.  Counts One and Two must be dismissed because of the res

judicata effect of a New York state court decision.  With respect to Count Three, Defendant has met its burden of proving that Plaintiff is not entitled to overtime pay because he was an exempt professional.  Accordingly, judgment will be entered dismissing the complaint in its entirety.  The Court's disposition of Plaintiff's claims renders moot Defendant's Federal Rule of Civil Procedure 72(a) motion (docket entry no. 94), to set aside Magistrate Judge Barbara C. Moses's March 21, 2024 Order (docket entry no. 93), and that motion is denied.


BACKGROUND

Plaintiff's Employment and Termination

Plaintiff joined KPMG on April 2, 2018, as a Senior Tax Associate in the M&A Tax Practice in the New York Metro office.  (Docket entry no. 73-1 ("Def. 56.1 St.") ¶ 1; docket entry no. 84-1 ("Pl. 56.1 St.") ¶ 1.)  Plaintiff has a Master's Degree in Taxation, which he received in 2011.  (Def. 56.1 St. ¶ 2; Pl. 56.1 St. ¶ 2.)  Before joining KPMG, Plaintiff had five years' experience as a Senior Associate at other firms.  (Def. 56.1 St. ¶ 3; Pl. 56.1 St. ¶ 3.)

On March 14, 2020, due to the COVID-19 pandemic, KPMG directed all employees who could work remotely to do so.  (Def. 56.1 St. ¶ 32; Pl. 56.1 St. ¶ 32.)  KPMG's offices closed fully a week later.  (Def. 56.1 St. ¶ 32; Pl. 56.1 St. ¶ 32.)

On April 21, 2020, the New York Metro M&A Tax group had its regularly-scheduled Interim Review process.  (Def. 56.1 St. ¶ 35; Pl. 56.1 St. ¶ 35.)  After Interim Review, on May 26, 2020, Plaintiff was presented with a Low Performer Memo.  (Def. 56.1 St. ¶ 42; Pl. 56.1 St. ¶ 42; docket entry no. 73-27 ("LPM").)  The Low Performer Memo stated that Plaintiff's "performance is below expectations and below what we expect for a professional at your level."  (LPM at 1.)

On May 31, 2020, Plaintiff challenged the Low Performer Memo.  (Def. 56.1 St. ¶ 43; Pl. 56.1 St. ¶ 43; docket entry no. 73-34 ("E&C Report") at 2.)  The Ethics & Compliance Group investigated Plaintiff's challenge and prepared a final report on September 14, 2020 (the "E&C Report").  (Def. 56.1 St. ¶ 43; Pl. 56.1 St. ¶ 43; E&C Report at 2.)  The E&C Report stated that "[t]he investigation determined that Reporter's [Plaintiff's] allegations were unsubstantiated."  (E&C Report at 10.)

A Low Performance Justification Memo was filed on September 21, 2020.  (Def. 56.1 St. ¶ 53; Pl. 56.1 St. ¶ 53; docket entry no. 73-30 ("Justification Memo").)  The Justification Memo stated that Plaintiff would "continu[e] to be designated as a low performer for FY20, as he was at Interim [Review]."  (Justification Memo at 2.)  The Justification Memo concluded that, "[a]s a FY20 LP [Low Performer], his [Plaintiff's] employment will be separated in connection with the upcoming reduction in force."  (Id. at 3.)

Plaintiff's employment with KPMG was terminated on October 16, 2020.  (Def. 56.1 St. ¶ 54; Pl. 56.1 St. ¶ 54.)

The BOA PPP Project

From April 2020 until his employment was terminated in October of that year, Plaintiff did little M&A Tax work.  (Def. 56.1 St. ¶ 45; Pl. 56.1 St. ¶ 45.)  Instead, from April 11, 2020, through July 31, 2020, Plaintiff spent most of his time on a non-M&A Tax project for Bank of America ("BOA") involving the federal Paycheck Protection Program (the "PPP").  (Def. 56.1 St. ¶¶ 45, 60-61; Pl. 56.1 St. ¶¶ 45, 60-61.)  The PPP provided forgivable, interest-free loans to certain small businesses.  (Def. 56.1 St. ¶ 55; Pl. 56.1 St. ¶ 55.)  BOA was involved in issuing loans under the PPP and retained KPMG to assist with the process.  (Def. 56.1 St. ¶ 56; Pl. 56.1 St. ¶ 56.)  KPMG asked for volunteers among its employees to work on

the BOA PPP project, and Plaintiff volunteered.  (Def. 56.1 St. ¶¶ 56, 58; Pl. 56.1 St. ¶¶ 56, 58.)

Plaintiff worked on the BOA PPP project from his home and performed all of the work on

computers.  (Def. 56.1 St. ¶ 59; Pl. 56.1 St. ¶ 59.)  Plaintiff claims that the PPP project was the

only working arrangement that would accommodate his childcare responsibilities during the

COVID-19 pandemic.  (Pl. 56.1 St. ¶¶ 45-46.)

The New York State Court Actions

On January 20, 2021, following his October 2020 termination, Plaintiff filed a

five-count complaint in New York state court against KPMG and six KPMG employees,

asserting claims of: defamation; discrimination and retaliation under N.Y. Executive Law section

296 et seq. ("NYSHRL"); discrimination and retaliation under New York City Human Rights

law section 8-107 et seq. ("NYCHRL"); breach of contract; and entitlement to overtime pay

under the FLSA and NYLL.  Pogil v. KPMG LLP, Index No. 150640/2021, docket entry no. 2

(N.Y. Sup. Ct. N.Y. Cnty. Jan. 20, 2021).  On February 19, 2021, defendants in the New York

state court action removed the state court action to this Court based on federal question

jurisdiction of the FLSA claim.  Pogil v. KPMG LLP, No. 21-CV-01528-JPO, docket entry no. 1

(S.D.N.Y. February 19, 2021).

Following the removal to this Court, Plaintiff filed a First Amended Complaint,

which excised the FLSA and NYLL claims but added claims for intentional infliction of

emotional distress and vicarious liability.  Pogil v. KPMG LLP, No. 21-CV-01528-JPO, docket

entry no. 12 (S.D.N.Y. Mar. 10, 2021).  Because the First Amended Complaint no longer

asserted any federal law claims, the case was remanded to state court pursuant to a so-ordered

stipulation.  Pogil v. KPMG LLP, No. 21-CV-01528-JPO, docket entry no. 25 (S.D.N.Y. Mar.

16, 2021).

Following motion practice, Plaintiff filed a Second Amended Complaint in New York state court on December 22, 2022. Pogil v. KPMG LLP, Index No. 150640/2021, docket entry no. 42 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 22, 2022) ("N.Y. Compl."). This Second Amended Complaint, which was the operative complaint in the state court action, asserted three claims: defamation, discrimination and retaliation under NYSHRL, and discrimination and retaliation under NYCHRL. Id. ¶¶ 115-45.

The Instant Action

On September 13, 2021, after Plaintiff had facilitated the remand to state court by dropping his federal claims from the state court action, Plaintiff filed the instant action against KPMG and the same six KPMG employees. (Docket entry no. 1.) Plaintiff brought three claims: discrimination under Title VII, retaliation under Title VII, and failure to pay overtime compensation under the FLSA and NYLL. (Id. ¶¶ 114-30.) The individual defendants were dismissed from this action on February 7, 2022. (Docket entry no. 11.) Plaintiff filed the Amended Complaint, which is the operative complaint in this action, on June 28, 2022, raising the same three claims. (Am. Compl. ¶¶ 114-39.)

The New York Supreme Court Decision

Litigation in the New York state court proceeded in parallel with litigation in this Court. On January 30, 2024, the New York Supreme Court, New York County granted summary judgment for defendants on all three counts (defamation, discrimination and retaliation under NYSHRL, and discrimination and retaliation under NYCHRL). Pogil v. KPMG LLP, Index No. 150640/2021, 2024 WL 343937, at *13 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 29, 2024).

The Supreme Court analyzed Plaintiff's NYSHRL and NYCHRL discrimination claims under the three-step McDonnell Douglas framework. Id. at *9; see McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802-803 (1973).  First, the court held that Plaintiff "did not make out a prima facie case of discrimination under the McDonnell Douglas standard" because "plaintiff could not show any employees under materially similar circumstances who were treated more favorably than plaintiff."  Pogil, 2024 WL 343937, at *11.  The court continued to the second step, holding that, "[e]ven assuming plaintiff did meet his burden [to make a prima facie case], defendants offer legitimate, nondiscriminatory reasons for terminating plaintiff's employment in the RIF [reduction-in-force]."  Id.  Finally, on the third step, the court held that "Plaintiff did not provide evidence to demonstrate that there are triable issues of fact that the reasons proffered by defendants were pretextual or even that the decision to terminate plaintiff was partially motivated by gender and/or childcare status discrimination."  Id. at *12.

With respect to the retaliation claim, the Supreme Court held that Plaintiff failed to make a showing that he engaged in "protected activity."  Id. at *13.  According to the court, Plaintiff's only allegation of "protected activity" was challenging the Low Performance Memo and Plaintiff failed to "prove a causal connection between the investigation [into Plaintiff's challenge] and [the adverse action,] his inclusion in the RIF [reduction in force]."  Id.

The Appellate Division, First Department Decision

Plaintiff appealed, and the state Supreme Court's Appellate Division, First Department unanimously affirmed the trial court's decision on June 11, 2024.  Pogil v. KPMG LLP, 212 N.Y.S.3d 629, 631 (N.Y. App. Div. 1st Dep't 2024).  The Appellate Division affirmed the dismissal of Plaintiff's defamation claim as well as the Supreme Court's analysis and disposition of his discrimination claim.  With respect to the discrimination claim, the Appellate Division held that Plaintiff had "failed to establish a prima facie case that his employer, defendant KPMG LLP, discriminated against him because he is a male with childcare

responsibilities" and that Plaintiff "failed to show that he was treated differently from similarly situated female employees." Id. "Even if plaintiff had made out a prima facie case," the court explained, "defendants set forth documented, nondiscriminatory grounds for having terminated him: utilization rates well below target levels and a habit of declining or delegating work." Id. Further, Plaintiff failed to show that these performance grounds were "pretextual." Id.

On the retaliation claim, the Appellate Division concluded that "Plaintiff's retaliation claim was correctly dismissed" because "the acts he categorizes as retaliatory predate [his May 31, 2020 appeal of the Low Performer Memo] and thus cannot support a retaliation claim." Id. at 632.

After the Appellate Division's decision, Plaintiff moved for reargument, or in the alternative, for leave to appeal to the New York Court of Appeals. On August 15, 2024, the Appellate Division denied Plaintiff's motion. Pogil v. KPMG LLP, Case No. 2024-00752, docket entry no. 17 (N.Y. App. Div. 1st Dep't Aug. 15, 2024).

DISCUSSION

Defendant moves for summary judgment. Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." Caldarola v. Calabrese, 298 F.3d 156, 160

(2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87,

(1986)).  The nonmoving party "may not rely on mere conclusory allegations nor speculation,

but instead must offer some hard evidence showing that its version of the events is not wholly

fanciful." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).

"When the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim." Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun

Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986)).  In that event, "the nonmoving party must come forward with admissible

evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."

Id. (citing Celotex, 477 U.S. at 322-23).  "Where no rational finder of fact 'could find in favor of

the nonmoving party because the evidence to support its case is so slight,' summary judgment

must be granted." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted).

In determining whether there is a genuine issue of material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d

Cir. 2012) (citation omitted).  In employment discrimination cases, where direct evidence of

intentional discrimination is rare, "affidavits and depositions must be carefully scrutinized for

circumstantial proof" of discrimination.  Turner v. NYU Hosps. Ctr., 784 F. Supp. 2d 266, 275

(S.D.N.Y. 2011) (citing Gallo v. Prudential Residential Servs., Ltd., P'ship, 22 F.3d 1219, 1224

(2d Cir. 1994)), aff'd, 470 F. App'x 20 (2d Cir. 2012).

Res Judicata

Defendant argues that summary judgment is appropriate because Plaintiff's claims are barred by res judicata as a result of the Appellate Division's decision. "To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 87 (2d Cir. 2000); see also 28 U.S.C. § 1738. "Under New York law, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Giannone v. York Tape & Label, Inc., 548 F.3d 191, 193 (2d Cir. 2008) (citation omitted). "To establish claim preclusion, a party must show: (1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions." Belton v. Borg & Ide Imaging, P.C., 197 N.Y.S.3d 399, 401 (N.Y. App. Div. 2023).

First, there is no dispute that the Appellate Division decision was a final judgment on the merits, and Plaintiff has exhausted further appellate review. See Pogil v. KPMG LLP, Case No. 2024-00752, docket entry no. 17 (N.Y. App. Div. 1st Dep't Aug. 15, 2024) (denying Plaintiff's motion for reargument, or in the alternative, for leave to appeal to the Court of Appeals). Second, it is undisputed that there was privity between the parties here and in the New York state courts.

With respect to the third element, New York courts "have consistently applied a 'transactional analysis approach.'" Simmons v. Trans Express Inc., 37 N.Y.3d 107, 111 (N.Y. App. Div. 2021) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (N.Y. App. Div. 1981)). "[T]o determine whether two claims arise out of the same transaction or series of transactions," New York courts consider whether "the claims turn on facts that 'are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage.'"

Id. at 111-12 (quoting Xiao Yang Chen v. Fischer, 6 N.Y.3d 94, 100-101 (N.Y. App. Div.

2005)). "'[O]nce a claim is brought to a final conclusion, all other claims arising out of the same

transaction or series of transactions are barred, even if based upon different theories or if seeking

a different remedy.'" Id. at 111 (quoting O'Brien, 54 N.Y.2d at 357)). The Title VII

discrimination and retaliation claims (Counts One and Two of the Amended Complaint) are

identical to the NYSHRL and NYCHRL discrimination and retaliation claims that Plaintiff

raised before the New York state courts and are therefore dismissed. The overtime claims

(Count Three), however, do not satisfy the transactional test and therefore cannot be dismissed

on claim preclusion grounds.

<u>Counts One and Two</u>

The Title VII discrimination and retaliation claims in this action "arise out of the

same set of operative facts" as the NYSHRL and NYCHRL discrimination and retaliation claims

in the New York state action. Belton v. Borg & Ide Imaging, P.C., 197 N.Y.S.3d 399, 402-403

(N.Y. App. Div. 2023). In the state court action, Plaintiff claimed that Defendants

"discriminated against him because he is a male with childcare responsibilities." Pogil v. KPMG

LLP, 212 N.Y.S.3d 629, 629 (N.Y. App. Div. 1st Dep't 2024); (see also N.Y. Compl. ¶ 129

(alleging that "Defendants discriminated against Plaintiff, in whole or in part, because he was a

male with child caregiving responsibilities")). He makes the same claim here. (Am. Compl.

¶ 122 (alleging that "Defendants discriminated against Plaintiff, in whole or in part, because he

was a male with child caregiving responsibilities").) Plaintiff also asserted the same retaliation

claims before the New York state courts that he pursues here. (Compare N.Y. Compl. ¶¶ 133-41

with Am. Compl. ¶¶ 126-35.) Accordingly, res judicata compels dismissal of Counts One and

Two of the Amended Complaint. <u>See</u> <u>Belton</u>, 197 N.Y.S.3d at 402-403 (dismissing on res judicata grounds NYSHRL claims after federal court dismissed Title VII claims); <u>Barnes v. Royal Health Care LLC</u>, 357 F. App'x 375, 377 (2d Cir. 2009) (dismissing on res judicata grounds Title VII claims after state court dismissed tort claims also "arising from [plaintiff's] employment and subsequent termination").

Plaintiff resists dismissal, alleging that Defendant submitted false evidence to the New York state courts. Plaintiff points to purported inconsistencies between an affidavit submitted in this action and an affidavit submitted in the New York state action. (Pl. Supp. Mem. at 1-2; <u>see</u> <u>also</u> Pl. Mem. at 4-5.) Even if this allegation of falsified evidence were true, "assertions that the state court judgment was procured by perjury and misrepresentations does not take the claims asserted in this case out of the purview of res judicata." <u>Marshall v. Grant</u>, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007) (citing <u>Karaha Bodas Co., L.L. C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 500 F.3d 111, 122 (2d Cir. 2007); <u>Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.</u>, 117 F.3d 655, 661-63 (2d Cir. 1997)). "Indeed, the law in New York is that '[t]he remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015(a)(3)), and not by another plenary action collaterally attacking that judgment.'" <u>Id.</u> (quoting <u>St. Clement v. Londa</u>, 779 N.Y.S.2d 460, 461 (N.Y. App. Div. 2004)).

Plaintiff also argues that the New York state courts erred by failing to consider the mixed-motive framework. (Pl. Supp. Mem. at 2-4.) Plaintiff's contention, whatever its merit, "is irrelevant." <u>Male v. Tops Markets, LLC</u>, 354 F. App'x 514, 515 (2d Cir. 2009). "[I]t is well established that '[r]es judicata protects wrong decisions as fully as right ones.'" <u>Id.</u> (quoting <u>Friarton Estates Corp. v. City of New York</u>, 681 F.2d 150, 158 (2d Cir. 1982)). "Res judicata . . .

appl[ies] even in the face of a claim that the prior judgment was erroneous as long as that judgment stands." Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 327 (S.D.N.Y. 2003), aff'd, 88 F. App'x 468 (2d Cir. 2004).

Count Three

In Count Three, Plaintiff claims that he should be compensated for the overtime hours he worked during the BOA PPP project. (Am. Compl. ¶¶ 136-39.) Defendant contends that res judicata precludes this claim because it "could have been raised"—and was indeed initially raised—in the New York state court action. (Def. Supp Mem. at 3.) This misapprehends the governing standard. The "'could have been' language of the third requirement is something of a misnomer." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001). "The question is not whether the applicable procedural rules *permitted* assertion of the claim in the first proceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." Id. (emphasis in original). The overtime claim does not meet this test.

The overtime claim turns on the number of hours Plaintiff worked, and the nature of Plaintiff's job duties during the relevant time—issues not squarely addressed by the New York state courts in Plaintiff's prior lawsuit. Tellingly, Defendant implicitly concedes as much—its Rule 56.1 Statement addresses the "Facts Relevant to Plaintiff's FLSA and NYLL Overtime Claim" as a separate section from the "Facts Relevant to Plaintiff's Title VII Claim." (Def. 56.1 St. at 1, 10). The factual narrative in Defendant's Opening Brief in Support of Summary Judgment similarly sets the facts underlying the overtime claim separate and apart from the facts underlying the discrimination and retaliation claims. (Def. Mem. at 8-15.)

<u>Whether Plaintiff Is Entitled to Overtime Pay</u>

   While Count Three escapes the res judicata bar, Defendant is nonetheless entitled to summary judgment on that claim because Plaintiff was not, as a matter of law, entitled to overtime pay as an exempt professional under both the FLSA and the NYLL.

   <u>FLSA Professional Exemption</u>

   Under 29 U.S.C. section 207, an employee who works more than forty hours a week is entitled to overtime pay at a rate of one and one-half times her regular rate.  Section 213(a)(1), however, exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from the overtime pay requirement.  The Secretary of Labor— exercising power conferred by section 213(a)(1)—has defined "employee employed in a bona fide professional capacity" to include a "learned professional": an employee who is (1) "[c]ompensated on a salary . . . basis . . . at a rate of not less than $685 per week," (2) "[w]hose primary duty is the performance of . . . ," (3) work "[r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a); <u>see also</u> 29 C.F.R. § 541.301.  "[W]ork requiring advanced knowledge" is "work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment."  29 C.F.R. § 541.301(b).  The term "field of science or learning," as used in the regulation, includes accounting.  29 C.F.R. § 541.301(c).  The requirement that the field of knowledge be one "customarily acquired by a prolonged course of specialized intellectual instruction" "restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession."  29 C.F.R. § 541.301(d).  "The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree."  <u>Id.</u>

The undisputed factual record establishes that Plaintiff qualified as a learned

professional and was therefore not entitled to overtime pay.  First, it is undisputed that Plaintiff,

who earned an annual salary of $160,000 (weekly salary of $3,077), was "[c]ompensated on a

salary . . . basis . . . at a rate of not less than $685 per week."  (Def. 56.1 St. ¶ 18; Pl. 56.1 St.

¶ 18.)

      The educational element of the learned professional exemption is also satisfied.

Plaintiff's role as an M&A Senior Tax Associate "[r]equir[ed] knowledge of an advanced type in

a field of science or learning customarily acquired by a prolonged course of specialized

intellectual instruction."  29 C.F.R. § 541.300(a).  Plaintiff has a Bachelor of Science Degree in

Accounting and a Master's Degree in Tax.  (Def. 56.1 St. ¶ 2; Pl. 56.1 St. ¶ 2; docket entry no.

73-3.)  Furthermore, it is clear that Plaintiff's work was primarily intellectual.  As Plaintiff

explained in his deposition, he "did M&A Advisory work, tax due diligence, tax restructuring,

tax modeling," and had "calls with bankers and attorneys discussing purchase agreements,

commenting on those purchase agreements, amongst other things."  (Docket entry no. 105-1

("Pogil Dep.") at 171.)  Plaintiff also provided oversight to other tax professionals on client

engagements and delegated work to them.  (Id. at 83-84.)  Plaintiff himself has asserted that he

was acting as a "manager" on several deals.  (Id. at 73; see also Am. Compl. ¶¶ 17, 21, 46, 47,

86.)

      Indeed, Plaintiff does not argue that he was entitled to overtime pay as an M&A

Senior Tax Associate.  Rather, Plaintiff contends that his work on the BOA PPP project was not

of the same character such that, once he was assigned to such work, he was no longer exempt—

and was entitled to be paid overtime.  (Pl. Mem. at 24-26; docket entry no. 85-48 ("Pogil Decl.")

at 2.)  Plaintiff worked almost exclusively on the BOA PPP project from April 11, 2020, until

July 31, 2020.  (Def. 56.1 St. ¶¶ 45, 60-61; Pl. 56.1 St. ¶¶ 45, 60-61.)  According to Plaintiff, his duties on the BOA PPP project differed dramatically from those he had performed in his M&A Tax capacity.  (Pogil Decl. at 2-3.)  Plaintiff claims that the BOA PPP project was not "work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  (See id.)  Defendant does not object to Plaintiff's characterization of the BOA PPP project as non-exempt work.  For its part, Defendant argues that Plaintiff was still an exempt learned professional because his "primary duty" remained M&A Senior Tax Associate work.

The second element of the learned professional exemption requires "an employee's 'primary duty' [to] be the performance of exempt work."  29 C.F.R. § 541.700(a).  According to the Secretary of Labor, "[t]he term 'primary duty' means the principal, main, major or most important duty that the employee performs."  Id.  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  Id.  Furthermore, "temporary periods of non-exempt work do not necessarily alter the overall status of an otherwise exempt employee." Levine v. Vitamin Cottage Nat. Food Mkts., Inc., No. 20-CV-00261-STV, 2023 WL 6929402, at *17 (D. Colo. Oct. 19, 2023); see Counts v. S.C. Elec. & Gas Co., 317 F.3d 453, 456 (4th Cir. 2003) (holding that "the performance of nonexempt work for five or six weeks out of every eighteen months could not alter the plaintiffs' exempt status"); Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 517 (6th Cir. 2004) (holding that employees were not "preclude[d] from otherwise meeting the [administrative] exemption" by virtue of performing one to two months of nonexempt work during the year); Wingerd v. Kaabooworks Servs., LLC, No. 18-CV-2024-JAR-KGG, 2019 WL 1171700, at *16 (D. Kan. Mar. 13, 2019) (holding that a seventeen-day

"demotion" which did not alter an employee's salary or job title "d[id] not destroy [the employee's] classification as an exempt employee"); Dept. of Labor Wage & Hour Div., Opinion Letter FLSA2008-19, available at https://perma.cc/CL3A-VWD3 (December 19, 2008), at 2-3 (stating that "temporar[y] reassign[ment] to training" would not result in the loss of a long-held exemption when the employees' "primary duty continues to be that of an exempt [employee]").

   Plaintiff only worked on the BOA PPP project for 14 weeks out of his 2.5 years of employment with KPMG.  (Def. 56.1 St. ¶¶ 45, 60-61; Pl. 56.1 St. ¶¶ 45, 60-61.)  "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," C.F.R. § 541.700(b), and Plaintiff spent about 89% of his total time with KPMG <u>not</u> working on the BOA PPP project.[1]  Furthermore, while he worked on the BOA PPP project, Plaintiff received the same $160,000 salary and his job title remained unchanged.  (Docket entry no. 81 ("Bede Decl.") ¶ 3.)  The undisputed factual record indicates that Plaintiff's role on the BOA PPP project was temporary, and that Defendant wanted Plaintiff to return to M&A Tax work.  For example, in a July 14, 2020 email, one of Plaintiff's supervisors explained to Plaintiff that "you should start to work on getting integrated back into the group in advance of rolling off BOA so you can have the opportunity to work on as many M&A engagements before

---

[1]  Using Plaintiff's total 2.5-year employment as the denominator in this calculation is appropriate because "[c]alculating an employee's primary duties is based on the totality of the circumstances, and not on a weekly basis."  <u>Chart v. Mars, Inc.</u>, No. 08-CV-086598-RSWL-JCX, 2010 WL 11508334, at *2 (C.D. Cal. Oct. 28, 2010) (citing <u>Counts</u>, 317 F.3d at 456)); <u>see also</u> <u>Marshall v. Western Union Telegraph Co.</u>, 621 F.2d 1246, 1250-52 (3d Cir. 1980); <u>Holt v. City of Battle Creek</u>, 925 F.3d 905, 911 n.2 (6th Cir. 2019).

year end as possible." (Docket entry no. 85-31 at 5.)  Indeed, the Appellate Division, First

Department, found as much, noting:

> As the record makes clear, the BOA project meant a departure from the
> Mergers and Acquisitions (M&A) tax work that plaintiff had been hired to
> do, and rather than request or try to negotiate an end date to such
> arrangement, plaintiff appears to have summarily expected defendants to
> be amenable to his doing such work, apparently to the exclusion of all
> else.

Pogil v. KPMG LLP, 212 N.Y.S.3d 629, 632 (N.Y. App. Div. 1st Dep't 2024).

In his opposition papers, Plaintiff attempts—but fails—to raise several factual

issues.  First, Plaintiff contends that he "was never integrated back" into the M&A Tax group

and that the move to the BOA PPP project was permanent.  (Pl. Mem. at 23.)  Plaintiff's only

evidence in support of this assertion is that he was omitted from a September 8, 2020 "M&A

Availability" email that listed the hours each M&A Tax team member was available to work.

(Id. (citing docket entry no. 85-50).)  Plaintiff misrepresents the content of the communication.

Plaintiff was a recipient of the email, which was sent to all of the members of the M&A Tax

group, including Plaintiff.  (Docket entry no. 85-50.)  The email also tells each recipient that, if

their hours listed in the email are incorrect, the recipient should "update your availability."  (Id.

at 2-3.)  Plaintiff did not respond that he was available.  (See id.)  Indeed, the previous month, on

August 10, 2020, Plaintiff had said that he would not be available for M&A Tax projects for

"about [the next] 4-6 weeks" "while I figure out my childcare situation."  (Docket entry no. 87-5

at 2.)  Plaintiff restricted himself to BOA PPP work instead of the M&A Tax work he had been

hired to do.  (See id.)

Next, Plaintiff contends that he "expect[ed to] be compensated" for overtime

because his BOA PPP project team leader said he was "welcome to work overtime."  (Pogil

Decl. at 3.)  Plaintiff misleadingly quotes the relevant evidence.  In the full message chain,

Plaintiff's team leader says, "team members are able to work overtime if they want to." (Docket entry no. 85-49 at 6.) Immediately below that message, Plaintiff's co-worker asked whether that meant "we get paid for overtime?" and Plaintiff's team leader responded, "There is no OT pay." (Id.)

There is no genuine dispute of material fact that Plaintiff was a learned professional, that his work was primarily of a type consistent with that status, and that his compensation consistently exceeded the federal regulatory threshold. Therefore, he was, as a matter of law, exempt from overtime pay requirements during his temporary assignment to the BOA PPP project. Summary judgment in favor of Defendant on Plaintiff's FLSA claim is warranted as a matter of law.

### NYLL Professional Exemption

Like the FLSA, the NYLL generally requires overtime pay for employees who work more than forty hours a week. N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.2. Also, like the FLSA, the NYLL exempts those employees who work in a "bona fide" "professional capacity." N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.14(c)(4)(iii). A professional is defined by the NYLL as an employee:

> (a) whose primary duty consists of the performance of work: requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study . . . and from training in the performance of routine mental, manual or physical processes . . . [and] (b) whose work requires the consistent exercise of discretion and judgment in its performance; . . . [or] (c) whose work is predominantly intellectual and varied in character . . . and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

Id. The NYLL professional exemption is "nearly identical" to the FLSA professional exemption. Sethi v. Narod, 974 F. Supp. 2d 162, 185 (E.D.N.Y. 2013). The only difference is that the

NYLL exemption does not have a salary requirement.  Id.  Courts interpreting the NYLL routinely look to FLSA precedents.  E.g., id.; Frazier v. FCBC Cmty. Dev. Corp., No. 22-CV-5270-AS, 2023 WL 8602914, at *2 (S.D.N.Y. Dec. 12, 2023); Davis v. Lenox Hill Hosp., No. 03-CV-3746-DLC, 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004); Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010).  Because Plaintiff satisfies the professional exemption under the FLSA, he also satisfies the professional exemption under the NYLL.  Summary judgment in favor of Defendant dismissing Plaintiff's NYLL claim is warranted as a matter of law.

CONCLUSION

Counts One and Two must be dismissed because of the res judicata effect of a final New York state court decision in Plaintiff's earlier, related litigation.  On Count Three, Defendant is entitled to judgment as a matter of law dismissing Plaintiff's FLSA and NYLL claims because the undisputed record establishes that was an exempt professional under both the FLSA and the NYLL.  Defendant's motion to set aside pursuant to Federal Rule of Civil Procedure 72(a) is denied as moot.

The Clerk of Court is respectfully directed to enter judgment dismissing he complaint in its entirety, and to close this case.  This Memorandum Order resolves Docket Entry Nos. 40, 73, and 94.

SO ORDERED.

Dated: New York, New York
September 24, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge